UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**FRANCIS BAHR,**

     **Petitioner,**

**v.**                             **Case No. 8:18-cv-2847-MSS-JSS**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

     **Respondent.**

_____/

## O R D E R

Bahr petitions for a writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state court convictions for attempted first-degree murder with a firearm and attempted second-degree murder with a firearm. (Docs. 1 at 1 and 9-2 at 1235–36) After reviewing the petition (Doc. 1), the response and the appendix containing the relevant state court record (Doc. 9), and the reply (Doc. 12), the Court **DENIES** the petition.

## PROCEDURAL HISTORY

A jury found Bahr guilty of attempted first-degree murder with a firearm and attempted second-degree murder with a firearm (Doc. 9-2 at 1226–33), and the trial court sentenced Bahr to two concurrent life sentences. (Doc. 9-2 at 1237–39) Bahr appealed (Doc. 9-2 at 1262), and the state appellate court affirmed. (Doc. 9-2 at 1324) The post-conviction court denied relief without an evidentiary hearing (Doc. 9-2 at 1354–59), and the state appellate court affirmed. (Doc. 9-2 at 1462) Bahr's federal petition follows.

**FACTS**

On a Friday afternoon, Bahr drank beer and watched television at home with Dayle Drollett and Damian Blanchard. Around 11:00 PM, Bahr and Blanchard went to a local bar where they continued to drink alcohol until the bar closed. In the early morning, Bahr and Blanchard returned home, and Bahr listened to a voicemail on his mobile telephone. Bahr became outraged when he heard a male tell him to stay away from Rosa Pereira. Pereira was Bahr's friend, and Bahr wanted a romantic relationship with Pereira, but Pereira did not. After replaying the voicemail many times, Bahr walked to Pereira's home. Drollett and Blanchard followed.

Blanchard could not remember many details from that night because he was very drunk. Blanchard remembered that he and Bahr walked up to the front door of Pereira's home, while Drollett stood back near a shed. Blanchard knocked on the front door, walked away, and heard Bahr yell, "Nobody ever f*cks with me!" Four gunshots followed. Blanchard denied seeing Bahr shoot anyone. Bahr and Blanchard walked together back home, and Bahr continued to repeatedly mutter, "Nobody ever f*cks with me." On cross-examination, Blanchard contradicted himself and denied remembering walking up to and knocking on Pereira's door. Also, Blanchard initially told police that he "would never think [Bahr] would do something like that," referring to the shooting, because Bahr has a "heart of gold."

Drollett, who drank only two beers that night and did not go to the bar, remembered more. When Bahr and Blanchard returned from the bar, Drollett observed Bahr listen to the voicemail on a speakerphone, heard a male's voice, and observed Bahr become outraged after playing the voicemail many times. Drollett walked with Bahr and Blanchard to Pereira's home and walked up with Bahr to the front door, while Blanchard hid behind a shed. Bahr

knocked on the front door, a male answered the door, and Bahr pulled out a gun. Drollett retreated down the driveway, heard Bahr yell, "[Y]ou'll never f*ck with me again," heard a gunshot, turned around, and saw Bahr raise his gun and shoot Pereira in the chest. Drollett ran back to Bahr's home. Bahr and Blanchard returned shortly after, and Drollett heard Bahr say, "[I]f you are going to do a crime like this, you have to know how to get rid of the evidence." Drollett left the trailer park when police arrived.

Pereira heard a knock at her door and heard Blanchard say, "[Bahr] got a DUI." Pereira opened her door, turned on the light above the carport, and saw Bahr leaning on the hood of her car. Pereira was angry that Bahr had come to her home. David Sharp, Pereira's boyfriend, came outside. Bahr shot Sharp in the neck, helped Sharp to the ground, stood over him, and asked him if he "wanted another." Bahr then turned his gun to Pereira and fired two gunshots hitting her in the face and grazing the back of her head.

Pereira agreed that telephone records showed that she had called Bahr several times the night of the shooting, but she could not explain why she called Bahr or what she spoke about with Bahr. Sharp denied calling Bahr with Pereira's telephone. Telephone records showed that between 11:58 PM and 4:51 AM, Bahr called and spoke with Pereira three times, Pereira called and spoke with Bahr twice, Pereira called Bahr and left a voicemail three times, Bahr sent Pereira a text message once, and Pereira sent Bahr a text message once. Also, Bahr listened to voicemails on his telephone six times.

Bahr testified in his own defense. Bahr denied going to Pereira's home and denied shooting Pereira and Sharp. Bahr conceded that he owned a gun but claimed that he sold the gun a week before the shooting. That night, Bahr drank beer and watched television at home with neighbors until 10:00 PM and walked to another neighbor's home where he saw Pereira

and Sharp. He stayed at the neighbor's home for an hour and went to the bar with Blanchard and two other people. While at the bar, Bahr called Pereira to ask her to come to the bar to sing karaoke. Bahr and Blanchard left the bar around 2:30 AM or 3:00 AM and returned home. Bahr received a voicemail from Pereira but she sounded really drunk. Bahr replayed the voicemail because he could not understand what Pereira said. Bahr fell asleep and later woke up when he heard a commotion outside. Bahr went outside and police arrested him and Blanchard. Bahr denied feeling jealous over Pereira and Sharp's relationship.

## STANDARDS OF REVIEW

**AEDPA**

Because Bahr filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act, AEDPA governs his claims. *Lindh v. Murphy*, 521 U.S. 320, 327 (1997). AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of

materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). A decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Clearly established federal law refers to the holding of an opinion by the U.S. Supreme Court at the time of the relevant state court decision. *Williams*, 529 U.S. at 412.

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

**Ineffective Assistance of Counsel**

Bahr asserts ineffective assistance of counsel — a difficult claim to sustain. *Strickland v. Washington*, 466 U.S. 668, 687 (1984) explains:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "[C]ounsel is strongly

presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690.

 "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To demonstrate prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 691. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690–91. A defendant cannot meet his burden by showing that the avenue chosen by counsel was unsuccessful. *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992).

Because the standards under *Strickland* and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (citation omitted).

In a decision without a written opinion, the state appellate court affirmed the order denying Bahr post-conviction relief. (Doc. 9-2 at 1462) A federal court "'look[s] through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume[s] that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). The post-conviction court provided reasons for denying Bahr's claims in a written order. (Doc. 9-2 at 1354–59)

**Exhaustion and Procedural Default**

A petitioner must exhaust the remedies available in state court before a federal court can grant relief on habeas. 28 U.S.C. § 2254(b)(1)(A). The petitioner must (1) alert the state court to the federal nature of his claim and (2) give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard v. Connor*, 404 U.S. 270, 278 (1971). The state court must have the first opportunity to review and correct any alleged violation of a federal right. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

A federal court may stay — or dismiss without prejudice — a habeas case to allow a petitioner to return to state court to exhaust a claim. *Rhines v. Weber*, 544 U.S. 269 (2005); *Rose v. Lundy*, 455 U.S. 509 (1982). If the state court would deny the claim on a state procedural ground, the federal court denies the claim as procedurally barred. *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

Also, the failure to comply with a state procedural rule governing the proper presentation of a claim generally bars review of that claim on federal habeas. *Coleman*, 501 U.S. at 729. "[A] state court's rejection of a federal constitutional claim on procedural

grounds will only preclude federal review if the state procedural ruling rests upon [an] 'independent and adequate' state ground." *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001). A state court's procedural ruling rests on an independent and adequate state ground if (1) the last state court rendering a judgment in the case clearly and expressly relies on a state procedural rule to resolve the federal claim without reaching the merits of the claim, (2) the state court's decision rests solidly on state law grounds and is not intertwined with an interpretation of federal law, and (3) the state procedural rule is not applied in an "arbitrary or unprecedented fashion," or in a "manifestly unfair" manner. *Judd*, 250 F.3d at 1313 (citing *Card v. Dugger*, 911 F.2d 1494, 1516–17 (11th Cir. 1990)).

To excuse a procedural default on federal habeas, a petitioner must demonstrate either (1) cause for the default and actual prejudice from the alleged violation of federal law or (2) a miscarriage of justice. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *House v. Bell*, 547 U.S. 518, 536–37 (2006).

## ANALYSIS

### Ground One

Bahr asserts that the state court violated his federal rights to due process and a fair trial by imposing a life sentence based on the jury's ambiguous findings on the jury verdict form. (Doc. 1 at 3) Section 775.087(2)(a)(3), Florida Statutes, requires a sentence of 25 years to life if a defendant commits attempted murder and discharges a firearm causing death or great bodily harm. Bahr contends that the verdict form was ambiguous because the jury found both that he "discharged a firearm causing great bodily harm" and that he "threatened, used, carried, or displayed a firearm." (Doc. 1 at 3)

The Respondent asserts that the claim is unexhausted and procedurally barred. (Doc. 9 at 4) Bahr raised this claim as issue two in his brief on direct appeal but neither "cit[ed] in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds," nor "simply label[ed] the claim 'federal.'" *Reese*, 541 U.S. at 32. (Doc. 9-2 at 1280–81) He instead cited state court opinions and argued that fundamental error arose from the defective jury verdict form. (Doc. 9-2 at 1280–81) Fundamental error is an issue of state law. *Pinkney v. Sec'y, Dep't Corrs.*, 876 F.3d 1290, 1299 (11th Cir. 2017). Because Bahr did not cite the federal constitution or other federal authority, he failed to alert the state court to the federal nature of his claim. *Reese*, 541 U.S. at 29 ("To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . ., thereby alerting that court to the federal nature of the claim.").

If Bahr returned to state court to exhaust the claim, the state court would deny the claim as procedurally defaulted. Fla. R. Crim. P. 3.850(c) ("This rule does not authorize relief based on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."). Bahr does not demonstrate either cause and actual prejudice or a miscarriage of justice to excuse the default in federal court. (Doc. 12 at 5) *Maples*, 565 U.S. at 280; *House*, 547 U.S. at 536–37. Consequently, the claim is barred from federal review. *Snowden*, 135 F.3d at 736.[1]

Ground One is **DENIED**.

---

[1] In his reply, Bahr asserts that ground one presents a "substantial claim having significant merit" and "by procedurally barring this claim he will not have had a meaningful opportunity to raise the issue complained of." (Doc. 12 at 5) If Bahr attempts to assert cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012), *Martinez* does not apply to a trial error claim. *Gore v. Crews*, 720 F.3d 811, 816–17 (11th Cir. 2013).

**Ground Two**

Bahr asserts that the state court violated his federal right to due process because the prosecution failed to prove premeditation to support the conviction for attempted first-degree murder. (Doc. 1 at 3–5)

The Respondent asserts that the claim is unexhausted and procedurally barred. (Doc. 9 at 6–7) Bahr raised this claim as issue three in his brief on direct appeal but neither cited *Jackson v. Virginia*, 443 U.S. 307 (1979) nor labeled the issue "federal." *Reese*, 541 U.S. at 32. (Doc. 9-2 at 1281–82) He instead cited state court opinions and argued that "there was an insufficient basis for the jury to conclude that there was a premeditated design to kill [Pereira]." (Doc. 9-2 at 1282) Because Bahr did not cite the Fourteenth Amendment right to due process or other federal authority, he failed to alert the state court to the federal nature of his claim. *Cascante v. Florida*, 816 F. App'x 429, 431 (11th Cir. 2020) (citing *Preston v. Sec'y, Fla. Dep't Corrs.*, 785 F.3d 449, 451 (11th Cir. 2015)).

If Bahr returned to state court to exhaust the claim, the state court would deny the claim as procedurally defaulted. Fla. R. Crim. P. 3.850(c). Bahr does not demonstrate either cause and actual prejudice or a miscarriage of justice to excuse the default in federal court. (Doc. 12 at 5) *Maples*, 565 U.S. at 280; *House*, 547 U.S. at 536–37. Consequently, the claim is barred from federal review. *Snowden*, 135 F.3d at 736.

Even if Bahr adequately exhausted the claim, the state court did not unreasonably deny the federal claim. A defendant is entitled to relief "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson*, 443 U.S. at 324. The court views the evidence at trial in the light most favorable to the prosecution. *Jackson*, 443 U.S. at 319.

The information charged Bahr in Count Two with attempted first-degree murder of Pereira. The jury found Bahr guilty of attempted first-degree murder in Count Two. (Doc. 9-2 at 1230) (Doc. 9-2 at 12) The Florida Supreme Court in *Glover v. State*, 226 So. 3d 795, 805–06 (Fla. 2017) (quoting *Morrison v. State*, 818 So. 2d 432, 452 (Fla. 2002)), defined premeditation as follows:

> Premeditation is defined as more than a mere intent to kill; it is a fully formed conscious purpose to kill. Premeditation may be formed in a moment and need only exist for such a time as will allow the accused to be conscious of the nature of the act he is about to commit and the probable result of that act. Premeditation can be shown by circumstantial evidence.

"'[E]vidence from which premeditation may be inferred includes such matters as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted.'" *Glover*, 226 So. 3d at 806 (quoting *Sochor v. State*, 619 So. 2d 285, 288 (Fla. 1993)). "Intent is almost always inferred from circumstantial evidence." *State v. Alexander*, 406 So. 2d 1192, 1194 (Fla. 4th DCA 1981).

Viewed in the light most favorable to the prosecution, the evidence proved that Bahr attempted to kill Pereira with a premeditated intent. Before the shooting, Bahr listened to a voicemail from a male who told Bahr to stay away from Pereira, a woman who had rejected his romantic interest. (Doc. 9-2 at 536–37, 666–72) After listening to the voicemail over and over and becoming enraged, Bahr walked over to Pereira's home armed with a loaded gun. (Doc. 9-2 at 537–39) Bahr knocked on Pereira's front door. (Doc. 9-2 at 557–58) Sharp, Pereira's boyfriend, came outside, and Bahr said, "[Y]ou'll never f*ck with me again," shot him in the neck, and asked him if he "wanted another." (Doc. 9-2 at 541, 686–89, 778–79) Bahr then turned his gun and fired two gunshots directly at Pereira hitting her in the face

and grazing the back of her head. (Doc. 9-2 at 542, 689–90, 779–80) As Bahr walked back home, Bahr repeatedly said, "Nobody ever f*cks with me." (Doc. 9-2 at 447)

Bahr's unrequited love for Pereira, his anger from the voicemail before the shooting, his deliberate decision to walk to Pereira's home armed with a loaded gun, his deliberate decision to point his loaded gun at Pereira and shoot her in the face at close range just after shooting Sharp, and his comments before and after the shooting, circumstantially proved his premeditated intent to kill Pereira. *Veney v. State*, 217 So. 3d 1189, 1190 (Fla. 1st DCA 2017); *Skanes v. State*, 821 So. 2d 1102, 1104 (Fla. 5th DCA 2002); *Cummings v. State*, 696 So. 2d 1306, 1307 (Fla. 5th DCA 1997).

Even though Bahr denied shooting Pereira, a rational juror could have found proof of premeditation beyond a reasonable doubt. Consequently, the state court did not unreasonably apply *Jackson* by denying the claim. *Cavazos v. Smith*, 565 U.S. 1, 7 (2011) ("[*Jackson*] unambiguously instructs that a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'") (quoting *Jackson*, 443 U.S. at 326); *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) ("*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts.'") (quoting *Jackson*, 443 U.S. at 319).

Ground Two is **DENIED**.

**Ground Three**

Bahr asserts that the trial court violated a state rule of evidence by admitting at trial the out-of-court statement that Drollett heard on the voicemail. (Doc. 1 at 5–6) He contends

12

that the state rule of evidence governing hearsay barred the admission of the statement. (Doc. 1 at 5)

The Respondent asserts that the claim is not cognizable on federal habeas because Bahr contends that the state court violated state law. (Doc. 9 at 8) Because "it is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts," the claim is not cognizable on federal habeas. *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (italics in original). *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.'") (citation omitted). *Panzavecchia v. Wainwright*, 658 F.2d 337, 340 (5th Cir. Unit B 1981) ("It is well settled that 'mere violation of evidentiary rules by the state trial court does not in itself invoke habeas corpus relief . . . .'").

The Respondent further asserts that, even if the Court could construe ground three as raising a claim based on the Sixth Amendment right to confrontation, the claim is procedurally barred because Bahr failed to preserve the issue for review on direct appeal. (Doc. 9 at 9) When objecting to the admission of the out-of-court statement, trial counsel cited the rule governing hearsay and did not cite either the Sixth Amendment or the federal right to confrontation. (Doc. 9-2 at 523–31) In his brief on direct appeal, Bahr argued for the first time that the admission of the out-of-court statement violated his federal right to confrontation. (Doc. 9-2 at 1284) However, in the answer brief, the State failed to argue that Bahr did not preserve the federal constitutional issue for review on appeal and instead only briefed the merits. (Doc. 9-2 at 1311–13) Because the State briefed only the merits and the state appellate court could have reviewed the unpreserved federal issue for fundamental error, this Court cannot presume that the state court's affirmance without a written opinion

(Doc. 9-2 at 1324) relied on a procedural default to reject the claim. *Phillips v. State*, 316 So. 3d 779, 782 (Fla. 1st DCA 2021). *Bennett v. Fortner*, 863 F.2d 804, 807 (11th Cir. 1989) ("The state's attorney may have briefed only the procedural default issue; he may have briefed only the merits; or he may have briefed both issues. . . . [O]nly when the state's attorney briefs the merits alone should the federal court also reach the merits.").

Thus, the Court construes ground three as raising a claim based on Bahr's federal right to confrontation and finds the claim is without merit. The state appellate court's affirmance without a written opinion (Doc. 9-2 at 1324) is an adjudication on the merits owed deference under Section 2254(d), and Bahr must show no reasonable basis for the denial of relief. *Richter*, 562 U.S. at 98–99.[2]

*Crawford v. Washington*, 541 U.S. 36, 53–54 (2004), holds that the Confrontation Clause under the Sixth Amendment bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." An out-of-court statement is testimonial if "in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Ohio v. Clark*, 576 U.S. 237, 245 (2015) (quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)). "[T]he Confrontation Clause 'prohibits only statements that constitute impermissible hearsay' because '[t]he Clause . . . does not bar the use of testimonial statements for purposes other than establishing

---

[2] Neither in his brief on direct appeal (Doc. 9-2 at 1282–84) nor in his federal petition (Doc. 1 at 5) does Bahr assert that the state court violated his federal right to due process. The claim is waived, unexhausted, and procedurally barred from federal review. *Boerckel*, 526 U.S. at 845. *Duncan v. Henry*, 513 U.S. 364, 366 (1995).

the truth of the matter asserted.'" *United States v. Pendergrass*, 995 F.3d 858, 879 (11th Cir. 2021) (quoting *United States v. Jiminez*, 564 F.3d 1280, 1286–87 (11th Cir. 2009)).

At trial, the prosecutor proffered the following testimony by Drollett after Bahr lodged his objection to the admission of the statement. Drollett testified that he observed Bahr and Blanchard repeatedly listen to a voicemail on a mobile telephone with the speakerphone turned on. (Doc. 9-2 at 527–28) Drollett heard a male voice "asking [Bahr] not to call [Pereira] anymore and not to come by," but Drollett did not recognize the voice. (Doc. 9-2 at 528) After listening to the voicemail, both Bahr and Blanchard angrily left for Pereira's home and Drollett followed. (Doc. 9-2 at 527)

The trial court ruled that the out-of-court statement was not hearsay and was, therefore, not barred by the hearsay doctrine (Doc. 9-2 at 529–30):

> [Court:]        What number is effect on the listener? Okay. Here it is. It is 801.4 in *Ehrhardt*, the 2014 volume, page 861, and that's under 801.6, statements offered to show the state of mind of the listener or hearer when evidence of an out-of-court statement is offered — sorry, Madam Court Reporter. I'll slow down — to prove the state of mind of a person who heard the statement. The statement is not hearsay because it is not being offered to prove the truth of the statement's contents.
>
> If testimony concerning an out-of-court statement by A to B is offered to show that B was on notice of an event, the statement is not being offered to prove — the statement is not being offered to prove its truth and, therefore, is not excluded by the hearsay rule. Whenever a material issue in an action involves the state of mind of a person, out-of-court statements, which are probative of that issue, are admissible if they are offered to prove the state of mind.

Okay. So I'll overrule the objection. . . .

Drollett testified consistently with his proffer. (Doc. 9-2 at 536–38) In closing argument, the prosecutor argued that Bahr purposefully went to Pereira's home with a loaded gun to shoot her after listening to the voicemail and becoming enraged. (Doc. 9-2 at 1070–73, 1151–52)

Whether the out-of-court statement was admissible non-hearsay is an issue of state law, and a state court's determination of state law receives deference in federal court. *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985). Because the trial court did not admit the out-of-court statement as proof of the truth of the matter asserted, the admission of the statement did not violate the Confrontation Clause. *Pindergrass*, 995 F.3d at 879–80. *Williams v. Illinois*, 567 U.S. 50, 57–58 (2012). Also, because the primary purpose of the speaker on the voicemail to Bahr was not to create an out-of-court substitute for trial testimony, the statement was not testimonial, and the admission of the statement did not violate Bahr's federal constitutional right of confrontation. *Clark*, 576 U.S. at 245. *United States v. Brown*, 441 F.3d 1330, 1360 (11th Cir. 2006) (holding that a "private telephone conversation between mother and son, which occurred while [the defendant's mother] was sitting at her dining room table with only her family members present" was not testimonial). Consequently, the state court did not unreasonably apply *Crawford*.

Ground Three is **DENIED**.

**Ground Four**

Bahr asserts that trial counsel was ineffective for not moving for judgment of acquittal based on the lack of evidence of premeditation. (Doc. 1 at 6–9) He concedes that the claim is unexhausted and procedurally defaulted (Doc. 1 at 9) but contends that cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012) excuse the default. (Doc. 1 at 6)

*Martinez*, 566 U.S. at 14, holds that when a state court requires a defendant to raise an ineffective assistance of counsel claim in a collateral proceeding, a petitioner can establish cause by showing either that the state court did not appoint him counsel in the proceeding or that appointed counsel was ineffective for not raising the claim, and he can establish prejudice by showing that the claim is a substantial one or has "some merit." Florida law requires a defendant to raise an ineffective assistance of counsel claim in a collateral proceeding. *Trevino v. Thaler*, 569 U.S. 413, 423–28 (2013); *Robards v. State*, 112 So. 3d 1256, 1266–67 (Fla. 2013). The state court did not appoint Bahr post-conviction counsel. (Doc. 9-2 at 1354–59). Consequently, Bahr may seek to excuse the procedural default merely by showing that the ineffective assistance of counsel claim has "some merit." *Martinez*, 566 U.S. at 14. Bahr fails to clear this low bar.

As the Court explains in ground two above, the prosecution presented sufficient evidence to prove that Bahr attempted to kill Pereira with premeditated intent. Bahr further asserts that the prosecution failed to rebut his reasonable hypothesis of innocence. (Doc. 1 at 7) Under state law, the prosecution carries the burden to rebut the defense's reasonable hypothesis of innocence only if the circumstantial evidence standard applies. *Knight v. State*, 186 So. 3d 1005, 1010 (Fla. 2016). "[T]he circumstantial evidence standard of review applies only where all of the evidence of a defendant's guilt — *i.e.*, the evidence tending to show that the defendant committed or participated in the crime — is circumstantial, not where any particular element of a crime is demonstrated exclusively by circumstantial evidence." *Id.* at 1010. At trial, Drollett testified that he observed Bahr shoot Pereira, and Pereira testified that she observed Bahr shoot her. (Doc. 9-2 at 542, 689) This testimony was direct evidence that Bahr committed some act that would have resulted in the death of Pereira.

(Doc. 9-2 at 1175) Fla. Std. Jury Instr. (Crim.) 6.2. Because this testimony was direct evidence of Bahr's guilt of the attempted murder of Pereira, the circumstantial evidence standard did not apply. *Knight*, 186 So. 3d at 1010. *Deloach v. State*, 270 So. 3d 457, 461 (Fla. 1st DCA 2019).

A motion for judgment of acquittal would not have succeeded, and trial counsel was not ineffective. *Pinkney*, 876 F.3d at 1297 ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief."). Because Bahr fails to demonstrate that the claim has "some merit," the claim is procedurally barred from federal review. *Martinez*, 566 U.S. at 14.

Ground Four is **DENIED**.

**Ground Five**

Bahr asserts that trial counsel was ineffective for not presenting testimony by an ophthalmologist and an expert in eyewitness identification. (Doc. 1 at 10–11) The post-conviction court denied the claim as follows (Doc. 9-2 at 1357–58) (state court record citations omitted):

> The Defendant alleges that counsel was ineffective for failing to call expert witnesses. The Defendant indicates that counsel should have called "an eyewitness identification expert" and an ophthalmologist. The Defendant asserts that the eyewitness identification expert would have testified that eyewitness identification is not reliable, is influenced by a number of factors, and leads to misidentification. As to the ophthalmologist, the Defendant claims this expert would have testified that the victim, Rose Pereira, was legally blind without her glasses and that she was not wearing them at the time of the shooting. The Defendant seems to suggest that had both of these experts testified, they would have undermined the victims' identification of the Defendant and the outcome of the proceedings would have been different.

To establish a facially sufficient claim of failure to call a witness, a defendant must provide the identity of the prospective witness, the substance of the witness's testimony, an explanation about how the omission of this evidence prejudiced the outcome of the trial, and an assertion that the witness was available to testify. *See Barthel v. State*, 882 So. 2d 1054, 1054–55 (Fla. 2d DCA 2004) (citing *Nelson v. State*, 875 So. 2d 579, 582–83 (Fla. 2004)). However, when alleging that counsel should have called an expert witness, a defendant does not need to name a specific expert or allege that the expert was available to testify. *See State v. Lucas*, 183 So. 3d 1027 (Fla. 2016); *see also Terrell v. State*, 9 So. 3d 1284 (Fla. 4th DCA 2009). To establish prejudice, a defendant must show, based on the circumstances of the case, "'that there is a likelihood that the deficient conduct affected the outcome of the court proceedings.'" *Nelson*, 875 So. 2d at 583 (quoting *Smith v. State*, 445 So. 2d 323, 325 (Fla. 1983)).

As an initial matter, the Court notes that the Defendant's claim that he was misidentified completely contradicts his claim in [an earlier ground] that he did not make a conscious decision to kill the victims due to his intoxication at the time of the offenses. *Davis v. State*, 938 So. 2d 555, 558 (Fla. 1st DCA 2006) ([a]ffirming denial of motion in part because the defendant's allegations contradict each other).

Moreover, the Court finds that the Defendant fails to establish that he suffered prejudice because there was significant evidence to identify him as the shooter of the victims. The record reflects that both victims knew and were familiar with the Defendant prior to the shooting. One of the victims, Rosa Pereira, testified that she had been friends with the Defendant for two years prior to the shooting and that he bought her a Pandora friendship bracelet. The other victim, David Sharp, testified that he had seen the Defendant at least four times prior to the shooting and that Rosa had called him outside right before the shooting occurred because the Defendant was there. Both of the victims testified that although the shooting was early in the morning, the area was well lit and they were positive it was the Defendant. Rosa Pereira further testified that she argued with the Defendant before he shot her and David. Rosa told an eyewitness that the Defendant was the shooter by indicating that the person who bought her the bracelet shot her and confirmed to law enforcement that it was the Defendant while she was recovering in the hospital. David also communicated to law enforcement that the Defendant shot him

and that he never had any doubt that the Defendant was the shooter. The record thoroughly reflects that both victims knew the Defendant, that this was not a case of mistaken identity, and that they both also argued with the Defendant prior to the shooting. Therefore, any testimony by an ophthalmologist or an eyewitness identification expert would not have changed the outcome of the proceedings.

Further, two additional witnesses who were present at the shooting identified the Defendant as the shooter. Damien Blanchard testified that he lived with the Defendant, saw the Defendant with a revolver, he went with the Defendant to Rosa's residence where the Defendant started arguing with her, and that he heard four gunshots. Dayle Drollett testified that the Defendant bought Rosa a Pandora bracelet, that the night of the shooting the Defendant came home from the bar intoxicated and very angry at Rosa, the Defendant had a revolver and went to Rosa's, and that he saw the Defendant shoot Rosa. Many witnesses testified that the area of the shooting was well lit, mitigating any potential misidentification problems. Based on the foregoing, the Defendant fails to establish that he suffered prejudice and this claim is denied.

The state court did not unreasonably apply *Strickland*'s prejudice prong. At trial, Pereira testified that she met Bahr two years before the shooting, had cut his hair, had visited his home, and regularly went out to eat with him and drank alcohol with him. (Doc. 9-2 at 1407–12) The night of the shooting, Pereira heard a knock at her door, turned on the light over the carport, and saw Bahr sitting on top of her car's hood. (Doc. 9-2 at 1416) Pereira denied experiencing any difficulty seeing Bahr after she turned on the light. (Doc. 9-2 at 1420) Pereira exchanged angry words with Bahr, and Sharp went outside. (Doc. 9-2 at 1417, 1421) Pereira saw Bahr shoot Sharp, turn around, and shoot her in the face. (Doc. 9-2 at 1421–22) At the hospital, Pereira told a detective that Bahr shot her, identified Bahr in a photograph, and testified at trial that she was "one-hundred percent certain" that Bahr was the shooter. (Doc. 9-2 at 1423, 1426–27)

Sharp testified that he had never met Bahr but had seen Bahr when Bahr frequented a car repair shop where Sharp worked. (Doc. 9-2 at 1428–29) Also, Sharp saw Bahr a couple of weeks before the shooting when Bahr drove his car behind Pereira's car in the neighborhood and when Pereira and Sharp visited the home of her nephew. (Doc. 9-2 at 1429–30) On the night of the shooting, Sharp was inside Pereira's home and heard Pereira frantically yell that Bahr was outside. (Doc. 9-2 at 1431) Sharp walked outside, saw the light above the carport turned on, and observed Bahr standing in front of Pereira's car. (Doc. 9-2 at 1432) Sharp immediately recognized Bahr. (Doc. 9-2 at 1433) Sharp saw Bahr walk toward him, look directly at him, raise and point the gun toward him, and shoot him. (Doc. 9-2 at 1434) Also, Sharp saw Bahr stand directly over him, point the gun at his head, and ask him if he "want[ed] another." (Doc. 9-2 at 1434–35) At the hospital, Sharp told a detective that Bahr shot him, identified Bahr in a photograph (Doc. 9-2 at 1438–39), and later identified Bahr as the shooter in court. (Doc. 9-2 at 1436)

An eyewitness testified that he walked up to the carport, could see the well-lit area, saw Pereira and Sharp wounded on the ground, and heard Pereira identify the shooter as the person who gave her the bracelet that she wore. (Doc. 9-2 at 1398–1401) Pereira testified that Bahr gave her the bracelet. (Doc. 9-2 at 1410)

Blanchard testified that he walked with Bahr to Pereira's home and heard Bahr yelling, "Nobody ever f*cks with me." (Doc. 9-2 at 1381–82) Blanchard retreated toward a shed and heard four gunshots. (Doc. 9-2 at 1382–83) Drollett testified that he, Bahr, and Blanchard walked to Pereira's home, and he heard Bahr say, "[Y]ou'll never f*ck with me again," followed by a gunshot, and he saw Bahr shoot Pereira. (Doc. 9-2 at 1389–93,

1395–96) When asked whether he was certain that Bahr shot Pereira, Drollett responded, "Yes, sir. I am dead serious." (Doc. 9-2 at 1393)

This reliable and consistent testimony by Pereira, Sharp, Blanchard, and Drollett proved Bahr's identity. Because Bahr could not demonstrate a reasonable probability that the outcome at trial would have changed if an expert had testified concerning the reliability of eyewitness identification or if an ophthalmologist had impeached Pereira concerning her ability to identify Bahr, the state court did not unreasonably apply *Strickland*. *Strickland*, 466 U.S. at 694. *Knight v. Fla. Dep't Corrs.*, 936 F.3d 1322, 1340–41 (11th Cir. 2019); *Solomon v. Kemp*, 735 F.2d 395, 402 (11th Cir. 1984).[3]

Ground Five is **DENIED**.

Accordingly, it is **ORDERED** that Bahr's petition (Doc. 1) is **DENIED**. The Clerk is **DIRECTED** to enter a judgment against Bahr and **CLOSE** this case.

## DENIAL OF CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED *IN FORMA PAUPERIS*

Because Bahr neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE AND ORDERED** in Tampa, Florida on March 24, 2022.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

_____

[3] Also, the state court correctly concluded (Doc. 9-2 at 1357) that Bahr contradicted himself by swearing under oath in his state post-conviction motion that "his incapacitation that was caused by intoxication of alcohol[ic] beverages interfered with his ability to form a conscious decision to kill another prior to his crime being committed." (Doc. 9-2 at 1340)